# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| SHARON BRANDENBERG and ROXANN HALL, individually and on behalf of all other persons similarly situated, known and unknown, | ) ) ) ) |
| Plaintiffs, | ) Case No. 3:20-cv-03198-SEM-KLM ) ) Judge Sue E. Myerscough |
| v. | ) ) |
| MERIDIAN SENIOR LIVING, LLC, | ) ) |
| Defendant. | ) ) |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Phillip A. Bock
David M. Oppenheim
**BOCK HATCH & OPPENHEIM, LLC**
203 N. La Salle St., Ste. 2100
Chicago, Illinois 60601
Telephone: (312) 658-5500
phil@classlawyers.com
david@classlawyers.com

Douglas M. Werman
Maureen A. Salas
**WERMAN SALAS P.C.**
77 West Washington St., Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008
dwerman@flsalaw.com
msalas@flsalaw.com

*Attorneys for Plaintiffs and Others Similarly Situated*

**I.     Introduction**

On September 11, 2024, this Court granted preliminary approval of the Parties' $1,421,550 non-reversionary class action settlement under the Biometric Information Privacy Act ("BIPA").[1] After preliminary approval, the Settlement Administrator successfully notified Settlement Class Members of their rights in the Settlement, including the right to object to the Settlement or request exclusion from it. The Settlement Administrator successfully mailed the Court-approved Notice to Settlement Class Members. In response to learning of their rights in the Settlement, the Settlement Class Members overwhelmingly support it: No Settlement Class Members objected to the Settlement and no Settlement Class Members requested exclusion. The lack of objections and exclusions is unsurprising given that the Settlement will provide substantial direct payments to Settlement Class Members without a claims process and without any reversion to Defendant for uncashed checks. As a result, the Court should now grant final approval of the Settlement and the other relief and enter the Parties' proposed order, attached as Exhibit C.

**II.     Legal Background and Procedural History** (Ex. A, Settlement Agreement, § I)[2]

Plaintiffs Sharon Brandenberg and Roxann Hall described in detail the legal background and procedural history of this lawsuit in their previous settlement filings, ECF No. 53 at § II. and § III, and in Section I. of their Settlement Agreement, which is attached here as Exhibit A.

**III.     Summary of Settlement Terms**

For the convenience of the Court, the material terms of the Settlement are set forth below.

  **A.     The Proposed Settlement Class** (Ex. A, Settlement Agreement, § III)

The Settlement Class is defined as:

---

[1]     Capitalized terms are defined in the Parties' Settlement Agreement, which is attached as Exhibit A.

[2]     Citations to the Settlement Agreement are in the headings of this Memorandum to avoid unnecessary multiplication of in-text citations.

1

> All persons from June 10, 2015 through September 11, 2024 whose hand, finger, face, retina, or iris were scanned during their employment at a facility owned, operated, or managed by Defendant within the State of Illinois.

Excluded from the Settlement Class are (1) the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family; and (2) persons who properly execute and file a timely request for exclusion from the Class.

At the time of the settlement, Defendant represented that there were approximately 1,755 Settlement Class Members. Ex. A, Settlement Agreement, § II.39. However, after a review of its records, Defendant subsequently identified 1,641 persons eligible to participate in the Settlement. Declaration of Dorothy Sue Merryman, Ex. B, ¶ 6 (hereafter "Merryman Decl., Ex. B, ¶ __"). After the provision of Notice, three additional Class Members self-identified as being Settlement Class Members, increasing the size of the Class from 1,641 to a total of 1,644 Settlement Class Members. Merryman Decl., Ex. B, ¶ 13.

The Parties agreed, and the Court preliminarily approved Plaintiffs as Class Representatives and Plaintiffs' attorneys Phillip A. Bock/Bock Hatch & Oppenheim, LLC and Douglas M. Werman and Maureen A. Salas/Werman Salas P.C. as Class Counsel.

**B.    Establishment of Settlement Fund; Payments to Class Members** (Ex. A, Settlement Agreement, §§ II.V)

At the time of the Settlement, Defendant agreed to pay a Gross Fund of $1,421,550, which was based on 1,755 Settlement Class Members, representing a gross award of approximately $810 to each Settlement Class Member ($1,421,550/1,755=$810). *See* Exhibit A, Settlement Agreement, § II. 39.  However, because the size of the Settlement Class *decreased* to 1,644 persons while the amount of the Gross Fund remains the same ($1,421,550), the ratable gross amount each Settlement Class Member will be paid *increases* to approximately $849.19 per share

2

($1,421,550/1,675 shares = $848.68).[3] *Id.* Funds from checks not cashed by Settlement Class Members in 180 days will be remitted to the Illinois unclaimed property fund in each such individual's name and will be available to them in perpetuity. Exhibit A, Settlement Agreement, § V.56(c).

The term "Net Fund" is the Gross Fund minus the following deductions, which are subject to Court approval: Settlement Class Counsel's attorney fees (*i.e.*, $473,850.00, which is one third of the Gross Fund); Settlement Class Counsel's litigation expenses (*i.e.*, $8,536.84); the Settlement Administrator's costs (i.e., $9,850.00); and the Settlement Class Representatives' Service Awards ($10,000.00 for Plaintiff Brandenberg and $10,000.00 for Plaintiff Hall, for a total of $20,000.00). The estimated amount of the Net Fund is therefore approximately $909,313.16, or a net amount of approximately $542.87 per Settlement Class Member per share ($909,313.16/1,675 shares = $542.87). Payments will be awarded in equal shares from the Net Fund to Settlement Class Members who did not exclude themselves from the Settlement. Exhibit A, Settlement Agreement, § V.49, 56.a. Settlement Class members subject to both finger and eye scans are entitled to two shares. *Id*. Settlement Class Members are not required to submit a claim form to receive payment. Exhibit A, Settlement Agreement, § V.49.

Any checks that remain uncashed after one hundred and eighty (180) days from the date they are issued by the Settlement Administrator shall be remitted to the State of Illinois Unclaimed Property Fund. Exhibit A, Settlement Agreement, § V.56.c. This will enable Settlement Class Members to request their settlement payments even if they miss the check cashing deadline. *See*

---

[3] The Settlement Agreement provides that payments will be awarded in equal shares to Settlement Class Members, but that Settlement Class Members subject to both finger and eye scans shall be entitled to two shares. Exhibit A, Settlement Agreement, § V.49, 56.a. There are 1,644 Settlement Class Members and 31 Settlement Class Members are entitled to two shares, for a total of 1,675 shares. Merryman Decl., Ex. B, ¶ 13.

https://icash.illinoistreasurer.gov/app/faq-general (last visited January 11, 2024) (Illinois "serves as a custodian of the assets [of unclaimed property] and never takes ownership of them.").

    **C.**    **Defendant's Representations of Compliance with BIPA** (Ex. A, Settlement Agreement, § VII)

Defendant represents that it has destroyed or deleted, or will destroy or delete, no later than 60 days after the Court enters the Final Approval Order, all hand, finger, face, retina, or iris scan data on its timekeeping system(s).

    **D.**    **Settlement Administration** (Ex. A, Settlement Agreement, § II.38)

The Parties have selected Class-settlement.com to act as the Settlement Administrator. The Settlement Administrator's costs are capped at $9,850, which shall be paid from the Gross Fund. Merryman Decl., Ex. B, ¶ 18.

    **E.**    **Release of Claims** (Ex. A, Settlement Agreement, § II.34)

Subject to Final Approval by the Court, Settlement Class Members will, upon the Effective Date, release and forever discharge any and all claims or causes of action for any relief of any kind including, but not limited to, actual damages, penalties, specific performance, injunctive relief, attorneys' fees, costs, interest, or any other relief, against Defendant or other Released Parties that arise out of, relate to or are connected with the alleged violation of or non-compliance with BIPA, as alleged in the Lawsuit, and the alleged scanning, capture, collection, storage, possession, transmission, purchase, receipt through trade and otherwise, sale, lease, trade, profit, disclosure, re-disclosure, dissemination, transmission, protection, conversion, or use of biometric identifiers, biometric information, or other biometric data in connection with Defendant's timekeeping system(s), whether pursuant to BIPA or any other federal, state or local law, including common law, regardless of whether such causes of action or claims are known or unknown, filed or unfiled, asserted or unasserted, and existing or contingent.

      **F.**      **Service Awards** (Ex. A, Settlement Agreement, § XIV)

Under the Settlement Agreement, Class Counsel may request that the Court award the Settlement Class Representatives up to $10,000 each as a Service Award for their work in prosecuting this lawsuit on behalf of the Settlement Class, working with counsel on written discovery, providing information to counsel supporting the claims, and recovering money for the Settlement Class.

      **G.**      **Attorneys' Fees and Costs** (Ex. A, Settlement Agreement, § XIV)

The Settlement Agreement allows Settlement Class Counsel to request that the Court award them up to one-third of the Gross Fund as attorneys' fees plus their reasonably incurred litigation expenses. On June 18, 2024, in a text order, the Court requested that Settlement Class Counsel submit additional financial information in support of their Motion for Preliminary Approval of Class Action Settlement and for an Award of Attorneys' Fees, Incurred Litigation Expenses and Administrative Costs, and Service Payments to the Class Representatives, justifying their fees and costs. On July 2, 2024, Settlement Class Counsel submitted the requested information (ECF No. 55) and on September 11, 2024, the Court granted Plaintiffs' Motion. ECF No. 58.

**IV.**    **The Notice Process Was Successful (Ex. B, Decl. of Claims Administrator)**

On September 25, 2024, Defendant's Counsel provided the Settlement Administrator a list of names, last known home addresses, employment locations, and social security numbers of 1,641 individuals (the "Class List"). Merryman Decl., Ex. B, ¶ 6. The Class List did not include email addresses for Class Members. Defendant's Counsel informed the Administrator that no email addresses were available. *Id.* at ¶ 6. Defendant also provided Class-Settlement with the type of scan(s) each Class Members provided to Defendant. *Id.* at ¶ 7. Defendant identified thirty (30)

5

Class Members who provided Defendant with both a finger and eye scan, and one additional class member self-identified as providing Defendant both a finger and eye scan. *Id.*

Class Counsel provided the Settlement Administrator with the Court-approved Notice of Proposed Class Action Settlement ("Notice"). Merryman Decl., Ex. B, ¶ 8. Prior to the issuance of the Notice, the member names and mailing addresses contained in the Class List were compared against the National Change of Address ("NCOA") database, a postal address verification system maintained by the United States Postal Service. *Id.* at ¶ 9. In the event that any individual has filed a change of address request with the U.S. Postal Service in the past 48 months, the NCOA processing would return the new address the member entered when filing the change of address request. *Id.* These new addresses obtained from the NCOA database would be utilized in connection with the mailing of the Notice. *Id.*

Prior to the issuance of the Notice, the Settlement Administrator also personalized the Notice by identifying whether Defendant's records indicated the Class Member provided a finger, eye, or finger and eye scan. Merryman Decl., Ex. B, ¶ 10.

On October 9, 2024, the Notice attached as <u>Exhibit 1</u> to the Merryman declaration was sent by mail to the 1,641 members on the Class List, after first comparing the list against the NCOA database. Merryman Decl., Ex. B, ¶ 11.

The Settlement Administrator established a web page, www.Class-Settlement.com/ MeridianSettlement, to provide information to Settlement Class Members. The web page was identified in the Notice. Merryman Decl., Ex. B, ¶ 12. The website included information explaining Class Members' options and links to the following documents: (1) Notice of Removal, (2) Plaintiffs' Unopposed Motion and Memorandum of Law for Preliminary Approval of Class Action Settlement and for an Award of Attorneys' Fees, incurred Litigation Expenses and

6

Administrative Costs, and Service Payments to the Class Representatives; (3) Notice of Plaintiffs' Supplemental Submission in Response to the Court's June 18, 2024 Order; and (4) the Preliminary Order Approving Class Action Settlement and Directing Notice to Settlement Class. *Id.* at ¶ 12.

On or about November 19, 2024, Class Counsel provided the Settlement Administrator with the names and addresses of three additional class members who self-identified themselves as Class Members and requested that they add these three members to the Class List. Merryman Decl., Ex. B, ¶ 13. Two of the additional Class Members provided an eye scan only and one of the additional Class Members provided both a finger and eye scan. *Id.* The Administrator verified the scan information for each member before adding them to the Class List. *Id*. With the inclusion of the three additional Class Members, the Class includes a total of 1,644 Class Members, and of the 1,644 Class Members, 31 Class Members provided Defendant with both a finger and eye scan. *Id.*

As of December 17, 2024, 416 of the mailed Notices were returned as undeliverable. Merryman Decl., Ex. B, ¶ 14. A total of 111 of the 416 returned Notices contained forwarding information. Class-Settlement forwarded the Notice where forwarding information was provided. *Id.* Class-Settlement performed a reverse look-up on the remaining returned Notices to locate updated addresses. *Id.* For an additional 41 Notices, a new address was obtained via Internet research. *Id.* Therefore, a total of 152 Notices were remailed. *Id.* Of the re-mailed Notices, 1 was returned as undeliverable. *Id.* In sum, to the best of the Administrator's knowledge, a total of 1,376 Notices (83.85%) were delivered via U.S. Mail. *Id.*

Class Members could exclude themselves from the proposed settlement by mailing a written statement requesting exclusion by December 8, 2024. Merryman Decl., Ex. B, ¶ 15. Class Members could object to the proposed settlement by mailing a written objection by December 8,

7

2024. *Id*. at ¶ 16. As of the date of this declaration, Class-Settlement has received no requests for exclusion and no objections to the settlement. *Id*. at ¶ 17.

The Settlement Administrator's total estimated cost for services in connection with the administration of this Settlement, including fees incurred to date, and all anticipated future costs for completion of the administration, is $9,850.00. Merryman Decl., Ex. B, ¶ 18. This amount was paid by the Defendant and will be ultimately deducted from the gross Settlement Fund. *Id.*

## V.     The Court Should Grant Final Approval

### A.     Approval Should Be Granted Pursuant to the Seventh Circuit's "*Wong*" Factors

Federal courts favor settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases).

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1)     Preliminary approval of the proposed settlement at an informal hearing;
(2)     Dissemination of mailed and/or published notice of the settlement to all affected class members; and
(3)     A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.* The Court preliminarily approved the parties' settlement on September 11, 2024. ECF No. 58. Plaintiffs now request that the Court grant final settlement approval.

8

To determine whether a proposed class action settlement agreement is fair and reasonable, the Seventh Circuit directs its district courts to consider "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.,* 773 F.3d 859, 863-64 (7th Cir. 2014) (citing cases). "'The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Id.* (quoting *In re Gen. Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1132 n.44 (7th Cir. 1979)). All of these "*Wong* factors" weigh in favor of final approval.

### *Wong* Factors 1 & 2: Strength of the Case for Plaintiffs and the Settlement Class on the Merits, Balanced Against the Extent of the Settlement Offer; the Complexity, Length, and Expense of Further Litigation

If the litigation had continued, it would have been complex, expensive, and protracted. Defendant has several arguments against liability, the merits of all of which have yet to be resolved by the courts. The possibility that all or much of the Class would get nothing was a real concern for at least two reasons.

*First*, Defendant is a managed care facility and Defendant took the position that Plaintiffs could not state cognizable BIPA claims because Defendant used the data at-issue for "health care operations" and "payment," as those terms are defined by HIPAA. If Defendant prevailed on this argument, the data does not fall within BIPA's coverage and Plaintiffs' claims would fail. See, e,g., *Mosby v. Ingalls Mem'l Hosp.*, 2023 IL 129081, 234 N.E.3d 110 (holding that nurses' biometric information, which was obtained when they used a medication dispensing system and its finger-scan device to provide patient care, was excluded from protective coverage under BIPA.)

9

*Second*, Defendant has argued that its equipment did not actually collect biometric information or biometric identifiers. Resolution of this question would likely involve a battle of technical experts. A ruling that Defendant did not collect biometric information or biometric identifiers would eliminate all BIPA liability.

In the face of these real legal risks and the prospect of protracted litigation, the $1,421,550 Settlement here is significant: it represents a recovery of approximately $864.69 gross per Settlement Class Member. This compares favorably with or exceeds other BIPA class action settlements where courts have granted preliminary and final approval.[4]

### *Wong* Factors 3 & 4:  Amount of Opposition to the Settlement and Reaction of Class Members to the Settlement

After successful distribution of the Court-approved Notice, to date no Settlement Class Members have objected to any term of the settlement or requested to be excluded from it.[5] *See, e.g., Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) (low opt-out and objection statistic showed that approximately 99.99% of the class elected to take part in the settlement); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001)

---

[4]  *Davis v. Heartland Employment Services*, Case No. 19-cv-680 (N.D. Ill.) ($500 per class member; $5,418,000 settlement fund; $1,806,000 fee award; *Lawrence v. Atria Management Co. LLC,* Case No. 2020-CH-01384 (Cir. Ct. Cook Cty) ($796 per class member; $867,350 settlement fund; $303,573 fee award); *O'Sullivan v. WAM Holdings Inc.*, Case No. 2019CH11575 (Cir. Ct. Cook Cty) ($601 per class member; $5,850,000 settlement fund; $2,047,500 fee award); *Collier v. Pete's Fresh Market*, Case No. 2019-CH-05125 (Cir. Ct. Cook Cty) ($675 per class member; $4,247,100 settlement fund); *Ebony Jones v. CBC Restaurant Corp. d/b/a Corner Bakery Café*, Case No. 19-cv-6736 (N.D. Ill.) ($800 per class member; $3,210,400 settlement fund; $1,070,133 fee award); *Heard v. THC – North Shore Inc. d/b/a Kindred Chicago Lakeshore, et al.*, Case No. 2017-CH-16918 (Cir. Ct. Cook Cty) ($789 per class member; $2,250,000 settlement fund; $750,000 fee award); *Stegmann v. Petsmart, LLC*, Case No. 1:22-cv-1179 (N.D. Ill.) (472 class; $899 (in cash or PTO) per class member; $424,555 settlement fund; $148,594 fee award); *Regalado v. Midwest Warehouse & Distribution System, Inc.*, Case No. 2020-CH-5989 (Cir. Ct. Cook Cty.) (3,348 class; $519 per class member; $1,736,000 settlement fund; $578,667 fee award); *Farias v. RR Donnelley & Sons Co.*, Case No. 2020-cv-07468 (N.D. Ill.) (557 class; $800 per class member; $445,600 settlement fund; $148,533 fee award).

[5]  If a Settlement Class Member submits an objection or exclusion to the settlement before the final approval hearing, Plaintiffs will promptly file a supplement to this motion and identify same.

(high acceptance rate "is strong circumstantial evidence in favor of the settlements"); *Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (settlement fair where only a small number of class members objected); *Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2008) (finding that the absence of any objections weighed in favor of approving a class action settlement). These results show overwhelming approval by the class.

### *Wong* Factor 5: Opinion of Competent Counsel

Settlement Class Counsel recommend this settlement as in the best interests of Settlement Class Members. *See* Declaration of Douglas M. Werman ¶¶ 12-13, 16-18, ECF No. 53-2. That recommendation is based on Settlement Class Counsel's substantial experience in class litigation, including dozens of similar BIPA class actions. *Id.,* ¶ 11 & Attachment A. That knowledge and experience was applied in analyzing the possible recovery against the risk, cost and delay or further litigation. *Id.* Therefore, this factor weighs strongly in favor of approval. *See Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982) ("The court also was entitled to 'rely heavily on the opinion of competent counsel' advanced by the proponents") (citation omitted).

### *Wong* Factor 6: Stage of Proceedings and the Amount of Discovery Completed

Although this case settled fairly early, that does not detract from the Settlement when the primary risks were legal, not factual, and the Parties shared sufficient information before and during mediation that they could evaluate the likelihood of success and reasonable settlement value. *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 350 (N.D. Ill. 2010) ("the focus of this litigation appears to be more on legal than factual issues, and there is no indication that formal discovery would have assisted the parties in devising the Proposed Settlement Agreement"). Here, the parties served and responded to written discovery and engaged in significant motion practice. This was sufficient to value the claims.

### B. Moreover, Approval Should Be Granted According to the Fed. R. Civ. P. 23(e)(2) Factors

#### 1. Rule 23(e)(2)(A): The Class Representatives and Class Counsel have Adequately Represented the Proposed Settlement Class.

Settlement Class Counsel and Plaintiffs adequately represented the proposed class by defeating Defendant's motion to dismiss and motion to stay and by negotiating an early settlement, before class certification or summary judgment, to mitigate litigation risk. Settlement Class Counsel and Plaintiffs negotiated a Settlement that provides meaningful monetary relief, without a claims process, without any reversion for uncashed checks, and with an appropriately-tailored release of claims.

#### 2. Rule 23(e)(2)(B): The Settlement Was Negotiated at Arm's Length

"[A] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.42 (1995). "Settlement negotiations that are conducted at arm's length and in good faith demonstrate that a settlement is not the product of collusion." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, * 2 (N.D. Ill. Dec. 10, 2001). Here, the Settlement was the result of a private mediation with retired Illinois Appellate Court Judge James Epstein. Declaration of Douglas M. Werman ¶ 17, ECF No. 53-2. In this context, the Settlement was the result of arm's-length negotiations. *See Lucas v. Vee Pak, Inc.,* No. 12-cv-09672, 2017 WL 6733688, at *12 (N.D. Ill. Dec. 20, 2017).

#### 3. Rule 23(e)(2)(C): The Settlement Provides Adequate Relief to the Class Considering (i) Costs, Risks, and Delay of Trial and Appeal, (ii) Effectiveness of the Proposed Method of Distributing Relief to Class Members, and (iii) Terms of the Proposed Attorney Fee Award

As explained above, the parties' Settlement provides adequate relief to the class

considering the proposed costs, risks and delay of trial and appeal. Also as explained above, the Class Notice process was successful. Finally, as Settlement Class Counsel explained in their request for fees and costs, ECF No. 55, their request for one-third of the Gross Fund, after deducting administration costs and Service Awards, is in line with the Seventh Circuit precedent and is equal to or below the fees awarded in other class settlements, including similar BIPA class settlements. *See* footnote 4, *supra*. And the Settlement provides for payment of any attorney fees after final approval at the same time as payments to Settlement Class Members. Settlement Class Counsel receives no special priority. Class members were given an opportunity to object to the requested fee and none did. Rule 23(e)(2)(C) is satisfied.

    **4.    Rule 23(e)(2)(C)(iv): Any Agreement required to be identified under Rule 23(e)(3)**

The Settlement Agreement is Exhibit A to this Memorandum. It sets forth all terms of the Parties' agreement. There are no side agreements.

    **5.    Rule 23(e)(2)(D): The Settlement Treats Settlement Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)**

The Settlement treats Rule 23 Settlement Class Members equally by distributing awards to them from the Net Settlement Fund on a *pro rata* basis. Each of them will receive an equal share of the Net Settlement Fund, except the thirty-one Settlement Class Members who were subject to both finger and eye scans—and therefore had two claims under BIPA—shall be entitled to two shares.

In sum, applying either the Seventh Circuit's *"Wong* factors" or the factors listed in Fed. R. Civ. P. 23(e)(2), all of those factors weigh heavily in favor of final settlement approval.

**VI.    Conclusion**

Because this Settlement is substantively and procedurally fair and reasonable in all respects, the Court should grant final approval and enter Plaintiffs' proposed Final Approval Order.

**Dated:** January 14, 2025 Respectfully submitted,

*/s/Douglas M. Werman*
**One of Plaintiffs' Attorneys**